## David. C. Wattles and Isaiah Butler v. The People.

*Informations — sufficiency of, in matters of substance, when involved, in this Court.* — In a case brought to this Court on exceptions before judgment, in pursuance of *Chapter* 197 *Comp. Laws,* (2 *Comp. L.,* p. 1594,) no errors are required to be assigned, and the sufficiency of the information, in matters of substance, though no objection be taken either in this Court or the Court below on that ground, is involved, to the extent at least, of determining whether it charges a criminal offence.

*Information for non-performance of official duty.* — An information or indictment for the non-performance of an official act, must set forth such a state of facts as, under the law, imposed upon the defendant, the duty to perform such act.

Since the act of 1859 requiring the registration of voters, an information against the inspectors of an election for refusing to administer to a person offering to vote one of the oaths prescribed by §25 of the Act of 1851, (1 *Comp L.,* pp. 107-8,) should contain an allegation that the name of the person offering to vote was duly registered; and in the absence of such allegation, it is not sufficient to sustain a verdict.

*Heard July* 6.    *Decided October* 10.

Error to Lapeer Circuit.

The defendants were tried and convicted on an information, of which the following is a copy:

WATTLES *v.* THE PEOPLE.

Charles M. Walker, Prosecuting Attorney for the county of Lapeer aforesaid, for and in behalf of The People of the State of Michigan, comes into said Court in the December term thereof, A. D. 1860, and gives it here to understand and be informed that heretofore, to-wit, on the 6th day of November, 1860, at North Branch, in said county, one Abraham Moyer appeared before David C. Wattles, Isaiah Butler and John Skym, who were then and there acting as a Board of Inspectors of Election at said election, and offered his ballot to vote for officers then to be chosen, and that he was then challenged as unqualified by David McConnell, an elector qualified to vote at that poll, and then and there the said Abraham Moyer stated that he was a qualified elector, and said challenge not having been withdrawn, he, said Moyer, demanded the right to have administered to him the oath contained in clause 1 of section 46, of the Compiled Laws of the State of Michigan, which he then claimed to contain grounds of his qualifications to vote, and that the said David C. Wattles, Isaiah Butler and John Skym did each, then and there, corruptly and willfully neglect and refuse to administer to said Moyer said oath in that behalf, contrary to the statute in such case made and provided, and against the peace and dignity of the State of Michigan.

CHARLES M. WALKER,
*Prosecuting Attorney for the County of Lapeer.*

*Baldwin & Draper* for plaintiff in error.

*A. Williams,* Attorney General, for The People.

CHRISTIANCY J.:

The defendants, who were inspectors of election for the township of North Branch, in the county of Lapeer, at the general election for the year 1860, were tried in the Circuit Court for that county, and convicted upon

an information charging, or intended to charge them with a breach of duty in neglecting and refusing to administer to one Abraham Moyer (offering to vote at that election) the citizen's oath, being the first oath provided for in the twenty-fifth section of the act of 1851. — *Sec.* 25, *Ch.* 6, *of Comp. L.*

Exceptions were taken on the trial to the admission of evidence, for refusing certain charges, and to the charges as given. The case is brought to this Court upon the exceptions before judgment, in pursuance of chapter 197 Comp. Laws (*Ch.* 166 *Rev. Stat. of* 1846.) No objection was taken to the sufficiency of the information either in the Court below or in this Court. But, as in this proceeding, no errors are required to be assigned in this Court, and we are "to hear and determine the questions of law arising on such exceptions, and "certify" our "determination to the Court in which the trial was had, *together with directions for a new trial or such other proceedings as right and justice shall require,*" (*Comp. L. Ch.* 197, §6,) we think the sufficiency of the information in matters of substance is necessarily involved, to the extent at least, of determining whether it charges a criminal offence. — *People v. McKinney*, 10 *Mich.*, 54. Merely formal defects, and probably such as might be amended under the statutes, should not be noticed. But if it clearly appears to the Court, whether brought to their attention by counsel or not, that the information contains no criminal charge, so that no conviction or judgment could be sustained upon it, whatever the evidence or charge might have been, then all we might say upon such evidence or charge would be outside the case, and extrajudicial; and whatever views the Court might entertain as to the rulings or charge of the Court below, they certainly would not direct a new trial, or any other proceeding, upon such information.

This charge was intended to be for the neglect of,

and refusal to perform, an official duty — that of admin-
.stering an oath to a person offering to vote at the
election in question, and whose vote was duly challenged.
It was doubtless intended to be based upon section
twenty-five of the act of 1851, ( *Comp. L.*, *pp.* 107 *and*
108,) which was supposed to impose the duty, and section
1 of chapter 188 Compiled Laws, providing the punish-
ment for the neglect or refusal to perform such duty.

To constitute a valid charge for the neglect or refusal
to perform this duty, the indictment or information must
(as in other cases for the non-performance of an official
duty,) set forth such a state of facts as, under the law,
imposed that duty upon defendants.  If facts are not
stated which entitled Moyer to take the oath, then it
fails to show any duty on the part of the inspectors to
administer it.    Till the existence of the duty is shown,
there can be no criminal offence in its non-performance.
Does this information show a state of facts existing at
the time of the supposed commission of the offence, which
made it the duty of the defendants, or any of them, to
administer the oath ?

By the 25th section of the act of June 27th, 1851,
above cited, it is enacted that "if any person offering to
vote shall be challenged as unqualified, by any inspector,
or by any elector, etc., the chairman of the board of
inspectors shall declare to the person challenged the con-
stitutional qualifications of an elector, and if such person
shall state that he is a qualified elector, and the chal-
lenge is not withdrawn, one of the inspectors shall ten-
der to him such one of the following oaths as he may
claim to contain the grounds of his qualification to vote."
The section then proceeds to set out five several forms
of oath, (the first of which is that which Moyer offered
to take,) and then enacts that "if such person, so chal-
lenged, will take either of the above oaths, his vote shall
be received," etc.

By the first section of chapter 188 Compiled Laws, it is enacted: "If any officer on whom any duty is enjoined by law, relative to general, special, township or ward election, or the canvassing or return of votes given at any election, shall be guilty of any corrupt conduct in the execution of the same, he shall, on conviction thereof, be deemed guilty of a misdemeanor, and shall be punished," etc.

Under these two statutes, had the law remained unchanged down to the time of the election in question, we are inclined to think the information would have been sufficient, as it sets forth all the facts which seem to be necessary under the act of 1851, to cast the duty in question upon the inspectors. But the act of February 14, 1859, (*Laws of* 1859, *pp.* 483 *to* 499,) requiring the registration of electors, has, we think, materially modified the act of 1851, in respect to the duties imposed upon the inspectors to administer any of the oaths provided for in the last named act. By the fifteenth section of the act of 1859, it is expressly provided "that the vote of no person shall be received whose name is not so registered." This act was in full force, and applied to, to the election of 1860. No duty, therefore, rested upon the inspectors at that election to administer any of the oaths mentioned in the act of 1851, to any person whose name was not registered according to the requirements of the act of 1859. This act has not altered the oaths to be taken by the act of 1851, nor the consequences which are to follow from taking either of them; nor is any oath authorized to be taken as a substitute for, or as proof of registration, though it does authorize an oath to be taken by, and questions to be put to, persons applying to be registered. The oaths provided by the act of 1851 still remain in force; but that no one of these oaths is to be administered to any person whose name has not previously been registered, is plain, from

the fact that upon taking any one of those oaths, the vote of the person so taking it is to be received, and this would be in direct violation of the fifteenth section of the act of 1859, which declares that "the vote of no person shall be received whose name is not so registered." The two statutes must be construed together, and by allowing the oaths provided by the act of 1851 to be administered only to persons whose names are registered, both statutes are harmonized.

The registry, therefore, is an indispensable preliminary to the right to take the oath in question, and until such registry there can be no duty on the part of the inspectors to administer it.

The previous registry of Moyer's name being indispensable to create the duty in question, it should have been alleged in the information. Without such an allegation, no duty on the part of the inspectors is shown, and consequently no criminal offence for its violation.

The information contains no such allegation, nor any other which, by any latitute of interpretation, can be held to include it. Nothing, whatever, is said upon the subject of registry. There is an allegation that "said Moyer then and there stated that he was a qualified elector;" but this does not amount to an allegation of the fact of such qualification, much less of his previous registry. It may have been all that was required upon this point, under the act of 1851, before the act of 1859 took effect; but it does not bear upon the fact of registry under the latter act.

Had there been a distinct allegation that Moyer was, at the time, a qualified elector, and nothing to show that any improper evidence had been admitted upon the point of registry, it is possible that, after verdict, this might have been held as, in some sense, including the fact of registry, and, inasmuch as no verdict could properly have been found against the defendants without proof of

registry, the defective mode of stating the fact might, perhaps, have been aided by the verdict at common law. — See *Regina v. Waters*, 1 *Dan. C. C.*, 356; 3 *Cox C. C.*, 300; *Note to Regina v. Watson*, 1 *Bennett & Heard Led. Cr. C.*, 451.

It is possible, also, that such a defective allegation of registry might have been amendable under the statute of 1855. But the present is not the case of a defective allegation: there is an entire omission of a material fact, without which the offence in question could have no legal existence. There is no criminal charge upon any possible construction, and, therefore, nothing to amend. It must, therefore, be certified to the Circuit Court that the information is invalid, charging no offence, and that it should be quashed and the verdict set aside.

MARTIN Ch. J. and CAMPBELL J. concurred.

COOLEY J. was not present.